UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

TIMOTHY JACOB BARR,
     Plaintiff,

vs.                         Case No.:  1:25cv323/MW/ZCB

CROSS CITY, FLORIDA, et al.,
     Defendants.

                                       /

## REPORT AND RECOMMENDATION

Plaintiff proceeds *pro se* and *in forma pauperis* in this civil rights action under 42 U.S.C. § 1983.  After performing its screening duties under 28 U.S.C. § 1915(e)(2)(B), the Court identified several deficiencies in Plaintiff's second amended complaint (Doc. 10) and ordered Plaintiff to correct those deficiencies by filing a third amended complaint.  (Doc. 11).  Plaintiff has now filed a third amended complaint.  (Doc. 14).

The Court must screen the complaint to determine if it is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from immune defendants.  28 U.S.C. § 1915(e)(2)(B).  Upon review, some of the claims in the third amended complaint fail to state a claim on which relief may be granted.

1

Accordingly, those claims should be dismissed and the case recommitted to the undersigned for further proceedings on the remaining claims.[1]

## I.    The Allegations in the Third Amended Complaint

The third amended complaint lists twelve Defendants who are employees of Cross City and Dixie County, Florida.[2]  Plaintiff also sues Cross City and Dixie County.  Sheriff Butler and Chief King are sued in their individual and official capacities. The remaining employee Defendants are sued in their individual capacities.  (*See* Doc. 14 at 4-7).

On October 10, 2022, Plaintiff's former same-sex partner—Florent Brunet—threatened Plaintiff.   Plaintiff reported the threats to Defendant Dorman, but no investigation occurred.  On October 11, 2023,[3] Plaintiff reported the threats to Defendants King, Butler, and Shannon

---

[1] Plaintiff has been provided multiple opportunities to amend after the Court identified and explained deficiencies in his prior pleadings.  (Docs. 7, 9, 11).  But the third amended complaint still contains deficiencies.  *See Horton v. Gilchrist*, 128 F.4th 1221, 1222 (11th Cir. 2025) (stating that ordinarily, a *pro se* "plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action").

[2] The individual Defendants are: (1) Sheriff Darby Butler; (2) Chief Jamey King of the Cross City Police Department; (3) Shannon Valentine; (4) Timothy Roberts; (5) Bradley Lea; (6) Benjamin Dorman; (7) Officer Meekins; (8) Sergeant Chapman; (9) Officer Dehart; (10) Brenda Timmons; (11) Johnny Valentine; and (12) Bobby Powell.

[3] Plaintiff says this report was made in October 2023, although it is unclear if this is a scrivener's error given the other allegations.

Valentine.  King told Plaintiff the threats were a county issue, and no investigation occurred.  On January 20, 2023, a county clerk "confirmed Plaintiff's account" and sent him a complaint form.  (Doc. 14 at 8-9).

On January 6, 2023, Plaintiff called 911 nine times to report a home invasion.  Defendants Lea, Dorman, and King responded but "only conducted superficial searches, refused to examine Plaintiff's phone, and took no official report."  (*Id.* at 9).  At 8:30 p.m., Lea and Dorman made an arrest report for misuse of a 911 system, which was "timestamped before the events that would have justified the charge occurred."  (*Id.*).  The report said Plaintiff was hearing noises.  Plaintiff claims this required a Baker Act evaluation—not an arrest report.  (*Id.* at 9-10).  At 11:45 p.m., Plaintiff called 911 again before calling Defendant Timmons while Plaintiff searched his attic.  Timmons later confirmed "what she heard during the call" and that Lea "hung up the phone on her at 11:50 p.m. . . . without allowing her to speak with him."  (*Id.* at 10).

At 12:15 a.m. on January 7, 2023, Defendants Lea and Dorman arrested Plaintiff for misuse of the 911 system and took him to the Dixie County Jail.  (*Id.* at 10-11).  When Plaintiff arrived at the jail at 12:21 a.m., Defendant Meekins slapped Plaintiff and made homophobic

3

comments. (*Id.* at 11).  Plaintiff was "doing good" when he was put in a cell with inmate Ernest Spencer.  (*Id.*).

Between 12:30 a.m. and 4:30 a.m., Defendant Lea escorted multiple civilians into the jail.  At 4:00 a.m., inmate Spencer was removed from the cell he shared with Plaintiff.  At 4:03 a.m., Defendants Meekins, Chapman, and others entered the cell, stripped Plaintiff naked, pepper-sprayed him, and beat him unconscious.  Defendant Dehart allegedly was present but failed to intervene.  Plaintiff suffered head injuries, cuts requiring stitches and staples, chemical burns, and scarring.  Inmate Spencer saw the incident and confirms Plaintiff was not resisting.  (*Id.* at 11-12).

At 6:00 a.m., Defendants Meekins and Chapman took Plaintiff to the hospital and said that inmates were responsible for Plaintiff's injuries.  The hospital report allegedly confirms Plaintiff's injuries and that Plaintiff was not suicidal, homicidal, or taking psychotropic medication.  No psychiatric hold was imposed, and Plaintiff left the hospital at 9:53 a.m. with no major restrictions.  (*Id.* at 12).

On January 8, 2023, before Plaintiff's arraignment, Jason Vanzile—a road deputy—filed a Baker Act report claiming Plaintiff was suicidal and combative.  Plaintiff claims this report contradicts other

records from the hospital and jail.  The report also included details about Plaintiff's same-sex partner that were never disclosed to Vanzile.  Vanzile took Plaintiff to Meridian Behavioral Health Hospital, and jail staff refused to transfer Plaintiff's prescribed medications.  (*Id.* at 12-13).  On January 17, 2023, Plaintiff called the Dixie County Sheriff's Office requesting records on the use of force at the jail and the Sheriff's Office policies.  But the Sheriff's Office had no designated records custodian. (*Id.* at 15)

On March 6, 2023, Plaintiff filed a complaint regarding the jail incident with Defendant Shannon Valentine for submission to the Dixie County Sheriff's Office.  Defendant Timothy Roberts "investigated a complaint against his own jail staff" but did not interview inmate Spencer, Defendant Timmons, or Plaintiff.  Roberts also did not review records or video and "produced only a letter head letter."  (*Id.* at 13).  On March 22, 2023, attorney Sean Gellis put the Sheriff's Office "on a federal litigation hold" requesting various records, but none were produced.  (*Id.* at 15).

Defendant Roberts prepared a report dated April 3, 2023.  Plaintiff alleges this report came two months after surveillance footage from the jail was auto-deleted on January 22, 2023.  A fifteen-day window existed

before the footage was deleted with "no policies and no metadata." (*Id.* at 13). Roberts' report stated: (1) Plaintiff's injuries came from a metal bunk; (2) Plaintiff was suicidal at the jail; (3) EMS treated Plaintiff's injuries at 12:47 a.m. on January 7, 2023; and (4) Plaintiff was in his cell alone when the incident occurred. Plaintiff alleges these findings are untrue and contradicted by other records. Defendants Johnny Valentine and Powell reviewed Roberts' report and approved it without finding any wrongdoing or conducting any further investigation. (*Id.* at 13-14).

On October 11, 2023, Plaintiff requested records from Defendants King, Shannon Valentine, and Butler. No records were produced. On October 18, 2023, Shannon Valentine told Plaintiff that she was a records custodian, was collecting information, and would send records to Plaintiff. But no records were sent. (*Id.* at 15-16). On November 15, 2023, Shannon Valentine released incomplete records of the 911 calls, fabricated court documents, and Plaintiff's false admission of guilt. Defendant Timmons, who allegedly had direct knowledge of the events on January 6–7, 2023, told Elise Carter that Plaintiff had been beaten at the jail. Carter did not come forward because she did not want to get involved. (*Id.* at 14-15).

On June 28, 2024, Plaintiff requested 911 recordings from Defendant Shannon Valentine but received no response. On July 11, 2024, Plaintiff requested records from Defendant King. King directed Plaintiff to Lt. Gary who sent Plaintiff back to King. On July 15, 2024, Plaintiff requested body camera and record retention policies from Shannon Valentine but received no response. Plaintiff followed up on August 15, 2024, but again received no response. (*Id.* at 16).

On January 8, 2025, Plaintiff requested records and policies from Defendant King and two others—City Manager John Driggers and City Clerk Watson. King sent Plaintiff a blank form, while Driggers sent the request to the City Attorney who never responded. From December 9, 2024, to January 28, 2025, Plaintiff sent nine records requests pertaining to the January 6–7 incidents to Defendants Shannon Valentine, Powell, Roberts, and Butler, as well as non-parties. (*Id.* at 16-17).

Plaintiff did not receive a response until January 28, 2025, when Defendant Shannon Valentine sent a letter claiming all records had been released and the investigation was over. Plaintiff alleges the records were never released, the 911 recordings omitted break-in calls, and officers' names were not disclosed. (*Id.* at 17).

In the third amended complaint, Plaintiff brings nine counts alleging various claims against Defendants. (Doc. 14 at 18-22). Plaintiff seeks compensatory damages, punitive damages, and equitable relief. (*Id.* at 18, 23).

## II.   Statutory Screening Standard

To survive dismissal at the screening phase, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). The plausibility standard is met only where the facts alleged enable "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility means "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (cleaned up).

Whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 678 (cleaned up). And "bare assertions" that "amount to nothing

more than a formulaic recitation of the elements" of a claim "are conclusory and not entitled to be assumed true." *Id.* at 681 (cleaned up). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679.

### III.  Discussion

### A. The third amended complaint asserts no claims against Defendants Lea or Dorman.

Although listed as Defendants, none of the counts in the third amended complaint bring any claims against Defendants Lea or Dorman. Indeed, their names do not even appear in any of the counts in the third amended complaint.  (Doc. 14 at 18-22).  Because Plaintiff fails to bring claims against Defendants Lea or Dorman in the third amended complaint, these Defendants should be dismissed. *See Allen v. Whitaker*, No. 423cv171, 2023 WL 6882435, at *5 (M.D. Ga. Oct. 18, 2023) ("If Plaintiff fails to link a named Defendant to a claim, the claim will be dismissed; if Plaintiff makes no allegations in the body of his complaint against a named Defendant, that Defendant will be dismissed.").

### B. Plaintiff fails to plausibly allege due process claims against Defendants Roberts and Johnny Valentine.

Count IV of the third amended complaint asserts Fourteenth Amendment due process claims against Defendants Roberts and Johnny

Valentine for a deficient investigation into the incidents at the jail. (Doc. 14 at 19-20). As explained in the Court's prior order, there "is no freestanding cause of action under the Fourteenth Amendment for failure to investigate." (Doc. 11 at 8 n.6). Accordingly, Count IV should be dismissed. *See Vinyard v. Wilson*, 311 F.3d 1340, 1356 (11th Cir. 2002) ("Vinyard has no substantive right of any kind to an investigation of her excessive force complaint by the Sheriff's Office, much less one created by the Constitution."); *see also Walker v. Florida*, No. 1:22cv133, 2023 WL 3306566, at *3 (N.D. Fla. Apr. 3, 2023) ("Plaintiff claims that Defendants violated his due process rights by failing to adequately investigate a car accident. That claim necessarily fails because there is no statutory or common law right, much less a constitutional right, to an investigation." (cleaned up)), *adopted*, 2023 WL 3306546 (N.D. Fla. May 6, 2023).

### C. Plaintiff fails to plausibly allege record production claims against Defendants Shannon Valentine, King, Butler, Powell, Dixie County, or Cross City.

Count VIII asserts a First Amendment claim for failure to produce records against Defendants Shannon Valentine, King, Butler, Powell, Dixie County, and Cross City. As previously explained in a prior order (Doc. 11 at 12), there "is no First Amendment right of access to public information[,]" which forecloses any constitutional claim for Defendants'

alleged failure to provide Plaintiff with the sought records. *See Houchins v. KQED, Inc.*, 438 U.S. 1, 15 (1978) (plurality) ("Neither the First Amendment nor the Fourteenth Amendment mandates a right of access to government information or sources of information within the government's control."); *see also Spottsville v. Barnes*, 135 F. Supp. 2d 1316, 1323 (N.D. Ga. 2001) (explaining that "there is no First Amendment right of access to public information"); *Holton v. Fla. Dep't of Revenue*, No. 8:25cv1606, 2026 WL 120234, at *1 (M.D. Fla. Jan. 16, 2026) ("Holton cannot plausibly allege the violation of a federally guaranteed right under the First Amendment to access records possessed or maintained by state entities."). Accordingly, Count VIII should be dismissed.

**D. Plaintiff fails to plausibly allege supervisory liability claims against Defendants Butler and King.**

Count V asserts Fourteenth Amendment supervisory liability claims against Defendants Butler and King. Plaintiff states that Butler was told about the use of force in the jail but never responded. Plaintiff states King was told about Plaintiff's same-sex partner's threats and was

present during Plaintiff's arrest on January 6, 2023, but took no corrective action.[4] (Doc. 14 at 20).

Count V essentially asserts supervisory liability for Defendants Butler and King failing to address (i.e., investigate) the threats by Plaintiff's same-sex partner and the use of force on Plaintiff at the jail. As stated previously, however, Plaintiff has no constitutional right to an investigation of his complaints. *See Vinyard*, 311 F.3d at 1356. Nor can Plaintiff maintain a cause of action based on a government official's failure to seek prosecution of another person. Plaintiff—as a private citizen—lacks "a judicially cognizable interest in the prosecution or nonprosecution of another." *Diamond v. Charles*, 476 U.S. 54, 64 (1986). Therefore, Plaintiff has no "right to compel a State to enforce its laws," *id.* at 65, by demanding that his same-sex partner be prosecuted for making threats. Nor does the Due Process Clause of the Fourteenth Amendment "require[] the State to protect the life, liberty, and property

---

[4] Plaintiff makes no allegations that Defendant King was at the jail during the use of force—which occurred on January 7, 2023. (Doc. 14 at 10-12). Instead, King was only present during Plaintiff's arrest which *did* occur on January 6, 2023. (*Id.* at 9-10). Plaintiff not including Defendant King in his failure to intervene claim against Defendant Dehart further suggests King was not present during the use of force at the jail. (*Id.* at 19).

of its citizens against invasion by private actors." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989). "The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security." *Id.*

Because Plaintiff had no constitutional right to have his complaints investigated or for a prosecution to be commenced, Count V fails to state a plausible claim for either direct liability or supervisory liability.[5] *See id.* at 197 ("[A] State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause."); *see also Myers v. Bowman*, 713 F.3d 1319, 1328-29 (11th Cir. 2013) ("[A] supervisor may not be held liable under section 1983 unless the supervised official committed an underlying violation of a constitutional right."). Accordingly, Count V should be dismissed.

### E. Plaintiff fails to plausibly allege a municipal liability claim against Dixie County and Cross City.

In Counts VI and VII, the third amended complaint asserts municipal liability claims against Dixie County and Cross City,

---

[5] To the extent Plaintiff alleges supervisory liability based on his record requests being ignored or denied, Plaintiff fails to plausibly allege such claims because, as explained above, Plaintiff has no underlying First Amendment right to access public records.

respectively.  Plaintiff claims the municipalities had no public records custodian, no public record policies or procedures, and no policies or procedures on internal affairs.  (Doc. 14 at 20-21).

This claim is subject to dismissal because, as previously explained, Plaintiff has failed to plausibly allege any underlying constitutional claims regarding his public records requests.  Thus, Dixie County and Cross City are not subject to municipal liability, even if they had no policies or procedures. *See Baker v. City of Madison, Alabama*, 67 F.4th 1268, 1282 (11th Cir. 2023) (stating that a municipality cannot be held liable unless there was an underlying constitutional violation). Accordingly, Counts VI and VII should be dismissed.

## F. Plaintiff fails to plausibly allege a failure to intervene claim against Defendant Timmons.

Count IX asserts a Fourteenth Amendment failure to intervene claim against Defendant Timmons.  Count IX states that Timmons had knowledge of the events of January 6–7, 2023, but failed to report the alleged wrongdoing to appropriate authorities.  (Doc. 14 at 22).

An "officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force, can be held liable for his nonfeasance." *Hadley v. Gutierrez*, 526

14

F.3d 1324, 1330 (11th Cir. 2008). "But it must also be true that the non-intervening officer was in a position to intervene yet failed to do so." *Id.* at 1331.

Here, Plaintiff merely alleges that Defendant Timmons had knowledge of Plaintiff's arrest and the use of force. (Doc. 14 at 22). This knowledge is based on Plaintiff calling Timmons on the phone right before the arrest and—after the use of force at the jail—telling a non-party that Plaintiff had been beaten. (*Id.* at 10, 15). There are no allegations, however, that Timmons was "present at the scene" or otherwise "in a position to intervene" during Plaintiff's arrest or the use of force at the jail. *Hadley*, 526 F.3d at 1330, 1331.

Plaintiff calling Defendant Timmons before his arrest is insufficient because Timmons was not present at the scene of the arrest.[6]  *See Sebastian v. Ortiz*, 918 F.3d 1301, 1312 (11th Cir. 2019) (noting that when an official "fails or refuses to intervene when a constitutional violation such as an unprovoked beating takes place *in his presence*, the officer is directly liable under Section 1983." (emphasis added)); *Baker*,

---

[6] There are also no allegations that Defendant Timmons was otherwise involved in the arrest aside from Plaintiff calling her beforehand and Defendant Lea hanging up on her. (Doc. 14 at 10).

67 F.4th at 1281 ("Officer Hose did not witness Officer Nunez's use of the taser and thus did not have the ability to intervene to prevent that use of force.").[7]

The same is true regarding the use of force at the jail. There are no allegations Defendant Timmons was present at the jail when the force was used. And even if Timmons later learned about the use of force and did nothing, this does not plausibly allege a failure to intervene claim. *See Baker*, 67 F.4th at 1281 ("The body camera footage shows that Officer Hose arrived at the scene more than two minutes *after* Officer Nunez fired his taser. That alone is fatal to Baker's [failure to intervene] claim."). Accordingly, Count IX should be dismissed.

## IV.  Conclusion

Accordingly, it is respectfully **RECOMMENDED** that:

1.    Counts IV through IX of the third amended complaint (Doc.

---

[7] It bears mentioning that Plaintiff has not plausibly alleged that his arrest was unconstitutional. As previously explained, Plaintiff's no contest plea provided probable cause for the arrest, and Plaintiff has alleged no new facts showing otherwise. (Doc. 11 at 22-25). Because there is no underlying constitutional violation, this is another reason Plaintiff cannot hold Defendant Timmons liable for failing to intervene in Plaintiff's arrest. *See Sebastian*, 918 F.3d at 1312 ("Of course, there also must be an underlying constitutional violation. Plainly, an officer cannot be liable for failing to stop or intervene when there was no constitutional violation being committed." (citation omitted)).

14) be **DISMISSED** for failure to state a claim on which relief can be granted.

2.    All Defendants except for Defendants Meekins, Chapman, and Dehart be **DISMISSED** from this action.

3.    This matter be recommitted to the undersigned for further proceedings on Count I (excessive force), Count II (failure to intervene), and Count III (equal protection) of the third amended complaint.

At Pensacola, Florida, this 9th day of March 2026.

/s/ *Zachary C. Bolitho*

Zachary C. Bolitho
United States Magistrate Judge

### Notice to the Parties

Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the Report and Recommendation. Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control. An objecting party must serve a copy of the objections on all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.